|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **DISTRICT OF NEVADA** | |

| | | |
|---|---|---|
| MICHAEL BRANNAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No.: 2:16-cv-01004-GMN-GWF |
| | ) | |
| BANK OF AMERICA, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 57), filed by Defendant Bank of America, N.A. ("BANA"). Pro Se Plaintiff Michael Brannan ("Plaintiff") failed to file a response.[1]

Also pending before the Court is BANA's Motion to Expunge Lis Pendens, (ECF No. 58). Plaintiff failed to file a response to this Motion as well. For the reasons discussed below, the Court **GRANTS** BANA's Motion for Summary Judgment and Motion to Expunge Lis Pendens.

## I. BACKGROUND

This case arises out of the non-judicial foreclosure on real property located at 2204 Night Parrot Avenue, North Las Vegas, Nevada (the "Property"). (First Am. Compl. ("FAC") ¶ 7, ECF No. 42). In August of 2007, Plaintiff purchased the Property by way of a loan from Countrywide Bank, FSB in the amount of $282,478.00 secured by a deed of trust ("DOT"). (*Id.* ¶ 8). On July 20, 2011, the DOT was assigned to BAC Home Loans Servicing, which subsequently merged with BANA. (*See* Mot. Summ. J. ("MSJ") 2:10–12, ECF No. 57); (Ex. C-

---

[1] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

1 to MSJ 30–31, ECF No. 57-1); (Ex. D-1 to MSJ 33–35, ECF No. 57-1).² BANA is the current holder of the promissory note evidencing the loan and BANA is the beneficiary of the DOT securing the loan. (MSJ 2:7–12); (*See* Note, Ex. A-1 to MSJ 6–7, ECF No. 57-1); (*See* DOT, Ex. B-1 to MSJ 9–10, ECF No. 57-1).

In September 2013, a notice of default (the "2013 NOD") was recorded against the property. (MSJ 2:16–17). Pursuant to Nevada Revised Statutes section 107.086, Plaintiff requested mediation under Nevada's Foreclosure Mediation Program. (*Id.* 2:18–19). Following the mediation on February 4, 2014, the mediator declined to issue a certificate of foreclosure because BANA failed to produce required documents including the original or certified copies of the note and the DOT. (FAC ¶¶ 20, 22); (MSJ 2:19–21). On March 16, 2016, BANA recorded a second notice of default and election to sell (the "2016 NOD"). (MSJ 2:22–24).

In light of this, Plaintiff filed his initial complaint in state court on April 4, 2016, and BANA subsequently filed a petition for removal. (*See* Ex. A to Pet. for Removal, ECF No. 1-2); (*See also* Pet. for Removal, ECF No. 1). Plaintiff filed his FAC on December 6, 2016. (*See* ECF No. 42). Plaintiff alleges that he paid the loan in full and that BANA moved forward with the foreclosure despite being in violation of the mediation process. (*Id.* ¶¶ 25, 23). Plaintiff brings claims for 1) specific performance; 2) temporary injunctive relief; 3) intentional infliction of emotional distress; 4) declaratory relief; 5) quiet title; and 6) breach of the implied covenant of good faith and fair dealing. (*See id.* ¶¶ 28–52).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

² BANA's exhibits to its Motion for Summary Judgment are designated as exhibits to the Declaration of Darsheen Littlejohn, which is identified as "Exhibit A." For ease of presentation, the Court will cite to the exhibits to the LittleJohn Declaration as if they were stand-alone exhibits. For example, the Court will refer to Exhibits A and B to the Littlejohn Declaration as "Ex. A-1," and "Ex. B-1," respectively.

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.   DISCUSSION

In its Motion for Summary Judgment, BANA argues that the undisputed material facts show that each of Plaintiff's causes of action fail as a matter of law. (BANA's Mot. Summ. J. ("MSJ") 3:16–23, ECF No. 57). Specifically, BANA asserts that it has produced competent evidence proving that Plaintiff has defaulted on the loan. (*Id.* 3:18–19). Further, BANA avers that, contrary to Plaintiff's assertion in his FAC, BANA was entitled to proceed with its 2016 NOD notwithstanding its failure to obtain a certificate of foreclosure pursuant to its 2013 NOD. (*Id.* 3:19–21). The Court will address each of Plaintiff's claims in turn.

A. **Specific Performance**

In his FAC, Plaintiff requests that the Court order BANA to produce the original or certified copies of the note, promissory note, or the DOT. (FAC ¶ 32). Alternatively, Plaintiff requests that the Court order BANA to extinguish the note and cease foreclosure proceedings in light of the fact that "the Note had been paid in full over 6 years ago." (*Id.* ¶ 33).

"Specific performance is an equitable remedy that is utilized in actions for breach of contract, and cannot be asserted as an independent claim for relief." *Shum v. American Sterling Bank*, No. 2:14-cv-0973-GMN-PAL, 2015 WL 265411, at *2 (D. Nev. Jan. 21, 2015) (citing *Carcione v. Clark*, 618 P.2d 346, 348 (Nev. 1980)). To be entitled to specific performance, a plaintiff must establish a breach of contract by the defendant. *Blanford v. Sun Trust Mortg., Inc.*, No. 2:12-cv-852-JCM-RJJ, 2012 WL 4613023, at *3 (D. Nev. Oct. 1, 2012).

Here, Plaintiff does not plead breach of contract in his FAC. (*See generally* FAC). Rather, Plaintiff's specific performance claim is linked to his allegation that Plaintiff has "paid the entire amount owed for the Note," and, accordingly, BANA wrongfully moved forward with foreclosure proceedings. (*Id.* ¶¶ 20, 33). Nonetheless, Plaintiff has not come forward with any evidence establishing that he paid the note in full.

BANA, however, has presented evidence that Plaintiff breached the terms of the note and DOT by failing to repay the loan, and that BANA is entitled to foreclose in the event of default. Specifically, BANA has submitted a copy of Plaintiff's payment history for the loan, which shows that Plaintiff stopped making payments on his loan in July of 2010. (Ex. E-1 to MSJ 37–48, ECF No. 57-1). The payment history indicates that Plaintiff has made no payments on the loan since that time, and that the outstanding principal balance is $273,391.46. (*Id.*). Under the terms of the DOT, BANA was therefore permitted to foreclose on the Property due to Plaintiff's failure to meet his payment obligations. (Ex. B-1 to MSJ ¶ 22, ECF No. 57-1).

Plaintiff's only evidence establishing his allegation that he paid the loan in full is his FAC. According to the FAC, "Plaintiff made all payments due on the mortgage loan, and in fact, had paid the loan in full at an accelerated rate." (FAC ¶ 9). At the summary judgment stage, however, Plaintiff cannot rely solely on unsupported allegations. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986) (noting that "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."). In light of BANA's undisputed evidence that Plaintiff breached the terms of the note and DOT, the Court finds that there is no genuine issue of material fact regarding Plaintiff's claim for specific performance. Accordingly, BANA is entitled to summary judgment on this claim.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff avers that "[BANA] breached the covenant of good faith and fair dealing by failing to comply with the terms of the mediation process with Plaintiff, by engaging in deceptive conduct in order to create a false impression respecting the title to the [Property] and by depriving the Plaintiff of the benefit of his bargain and agreement." (FAC ¶ 51). In response, BANA asserts that "Plaintiff does not identify any actions" that were "unfaithful to the purpose" of the note or the DOT. (MSJ 8:25–9:1).

"In Nevada, an implied covenant of good faith and fair dealing exists in every contract." *Armada Concrete, LLC v. Jaynes Corp.*, No. 2:14-cv-02176-GMN-GWF, 2017 WL 3567523, at *7 (D. Nev. Aug. 17, 2017) (citing *Shaw Const., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989)). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991).

Here, Plaintiff has failed to present evidence establishing that BANA operated in a manner that is unfaithful to the contract between Plaintiff and BANA. However, BANA, as

noted *supra*, has established that it has acted in accordance with the terms of the DOT. (*See* Ex. B-1 to MSJ ¶ 22); (Ex. E-1 to MSJ 37–48).

Further, Plaintiff's allegation that BANA failed to comply with the terms of the mediation process fails as a matter of law. Specifically, BANA was not obligated to produce original loan documents prior to commencing foreclosure proceedings. As this Court has previously noted, "[b]ecause foreclosures in Nevada are non-judicial, parties initiating foreclosure proceedings are not required to prove standing to foreclose in a court of law before initiating the foreclosure process." *Birkland v. Countrywide Home Loans, Inc.*, No. 2:11-cv-00502-GMN-PAL, 2012 WL 83773, at *4 (D. Nev. Jan. 11, 2012). "To the contrary, the case law within this district holds that the Nevada law governing nonjudicial foreclosure, NRS § 107.080, does not require a lender to produce the original note," prior to initiating foreclosure. *Villa v. Silver State Fin. Servs., Inc.*, No. 2:10-cv-02024-LDG-LRL, 2011 WL 1979868, at *6 (D. Nev. May 20, 2011) (quoting *Kwok v. Recontrust Co., N.A.*, No. 2:09-cv-02298-RLH-LRL, 2010 WL 4810704, at *4 (D. Nev. Nov. 19, 2010)). Nor does Nevada law require that a lender "prove its status as a real party in interest, holder in due course, current holder of the note, nominee of the current holder of the note, or any other synonymous status as a prerequisite to nonjudicial foreclosure proceedings." *Id.*; *Kwok*, 2010 WL 4810704, at *4.

In addition, BANA's alleged failure to obtain a certificate of foreclosure pursuant to its 2013 NOD does not preclude it from initiating foreclosure proceedings under its 2016 NOD. The Nevada Supreme Court has held that the "[d]enial of [a Foreclosure Mediation Program] certificate does not, without more, permanently preclude foreclosure." *Holt v. Reg'l Tr. Servs. Corp.*, 266 P.3d 602, 605 (Nev. 2011). Moreover, a lender may restart the non-judicial foreclosure process under a new notice of default. *See id.* ("The judicial review proceeding . . . halted the foreclosure sale noticed by the 2009 NOD, but it did not preclude [defendant mortgagees] from restarting the foreclosure process via the 2010 NOD."). Here, BANA's

failure to secure a certificate of foreclosure under the 2013 NOD did not preclude it from moving forward with the 2016 NOD.

Based on the foregoing, the Court finds that BANA's conduct relating to the mediation and BANA's subsequent initiation of foreclosure proceedings are not "unfaithful to the purpose of the contract and the justified expectations" of Plaintiff. *See Hilton Hotels Corp.*, 808 P.2d at 923. This is particularly the case in light of BANA's undisputed evidence that Plaintiff breached the contract by defaulting on the loan and that BANA was entitled to foreclose in the event of default. (*See* Ex. B-1 to MSJ ¶ 22); (Ex. E-1 to MSJ 37–48). Accordingly, BANA is entitled to summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

### C. Intentional Infliction of Emotional Distress

Plaintiff seeks relief for intentional infliction of emotional distress because BANA allegedly caused Plaintiff emotional distress by showing an "utter and complete disregard for the peace of mind of the Plaintiff." (FAC ¶¶ 38–41). According to the FAC, Plaintiff alleges his emotional distress arises specifically from BANA's failure to submit the required documentation during mediation and BANA moving forward with foreclosure despite lacking this documentation. (*Id.* ¶¶ 39–40).

To establish a claim for intentional infliction of emotional distress, a plaintiff must show: 1) extreme and outrageous conduct by the defendant with either the intention of, or reckless disregard for, causing emotional distress; 2) that, as a result of that conduct, the plaintiff suffered severe or extreme emotional distress; and 3) actual or proximate causation. *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999).

Here, Plaintiff fails to establish that BANA's conduct in foreclosing on Plaintiff's property was extreme or outrageous. As noted *supra*, Nevada law permits a lender to record a subsequent notice of default and restart the foreclosure process regardless of whether a

certificate of foreclosure was issued at a prior foreclosure mediation. *See Holt*, 266 P.3d at 605. Additionally, Nevada law does not require BANA to prove its status as a real party in interest as a prerequisite to initiating foreclosure proceedings. *See Birkland*, 2012 WL 83773, at *4. BANA's activity in this regard does not constitute conduct "outside all possible bounds of decency," or "regarded as utterly intolerable in a civilized community." *Goodwin v. Exec. Tr. Servs., LLC*, 680 F. Supp. 2d 1244, 1256 (D. Nev. 2010). As another court in this District recognized, "[l]enders may pursue their own economic interest without being subject to a claim for infliction of emotional distress for exercising their rights under the contract." *Smith v. Accredited Home Lenders*, 2:15-cv-01130-KJD-VCF, 2016 WL 1045507, at *3 (D. Nev. March 15, 2016). Therefore, the Court grants summary judgment for BANA on Plaintiff's claim for intentional infliction of emotional distress.

### D. Quiet Title

Plaintiff seeks quiet title by requesting that this Court declare the uncertified copies of the note, promissory note, or DOT invalid, "therefore conveying total and unencumbered interest in the subject property to the Plaintiff." (FAC ¶ 48). In Nevada, a claim to quiet title "may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). A quiet title claim "does not require any particular elements," but each party must prove his or her claim to the property in question. *Id.*

As discussed *supra*, Plaintiff has not established that he is entitled to the Property. BANA has shown that Plaintiff signed the note and DOT, and subsequently failed to make any payments after July 2010. (*See* Ex. A-1 to MSJ 6–7, ECF No. 57-1); (Ex. B-1 to MSJ 23–24, ECF No. 57-1); (Ex. D-1 to MSJ 33–35, ECF No. 57-1). In addition, BANA is allowed to foreclose in the event of nonpayment pursuant to the language of the DOT. (*See* Ex. B-1 to

MSJ ¶ 22, ECF No. 57-1). Accordingly, BANA is entitled to summary judgment on Plaintiff's quiet title claim.

### E. Declaratory and Injunctive Relief

Plaintiff asserts causes of action against BANA for declaratory and injunctive relief. (FAC ¶¶ 36–37, 42–45). Specifically, Plaintiff seeks to enjoin BANA from transferring, selling, assigning, or conveying the subject property or the loan that BANA holds on the subject property, and from foreclosing on the property pending the outcome of the instant action. (*Id.* ¶ 37). With regard to declaratory relief, Plaintiff asks this Court to issue a declaration that: 1) "any delinquency in mortgage payments occurred at the direction of [BANA] during the course of the loan modification process, not through any fault of the Plaintiff,"; and 2) "that it orders [BANA] to correct any negative notations on the Plaintiff's credit report which it may have issued" during the loan modification process. (*Id.* ¶ 44).

Both declaratory relief and injunctive relief are remedies rather than stand-alone causes of action. *See Martin v. Bank of America*, No. 2:15-cv-0372-GMN-PAL, 2016 WL 70456, at *3 (D. Nev. Jan. 6, 2016) ("It is well established that injunctive relief and declaratory relief are remedies rather than independent claims for relief."). Here, the Court has concluded *supra* that BANA is entitled to summary judgment on all of Plaintiff's independent claims for relief. In light of this conclusion, Plaintiff cannot establish that declaratory or injunctive relief is warranted. BANA is, accordingly, entitled to summary judgment on Plaintiff's claims for declaratory relief and injunctive relief.

### F. Motion to Expunge Lis Pendens

BANA requests that this court expunge the lis pendens that Plaintiff recorded against the Property on July 26, 2017. (Mot. to Expunge Lis Pendens 10:16–17, ECF No. 58). Local Rule 7-2(d) provides that "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees,

constitutes a consent to the granting of the motion." D. Nev. R. 7-2(d).  Given Plaintiff's failure to file an opposition, the Court grants BANA's Motion pursuant to Local Rule 7-2(d).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that BANA's Motion for Summary Judgment, (ECF No. 57), is **GRANTED**.

**IT IS FURTHER ORDERED** that BANA's Motion to Expunge Lis Pendens, (ECF No. 58), is **GRANTED**.

**DATED** this __8___ day of March, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court